**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, | |
| Plaintiff | |
| v. | Civil Action No. ____20-3937____ |
| GLOBAL STAFFING SOLUTION INC.; GONG THACH; DAVID THACH; HERR FOODS INC.; TOM SOEUNG, as administrator of the ESTATE OF LIKIENG SOEUNG; and CYNTHIA BROWN, individually and as administratrix of the ESTATE OF NATHAN ROYAL; | |
| Defendants | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Nautilus Insurance Company ("Nautilus") hereby files a Complaint for Declaratory Judgment against Defendants, Global Staffing Solution, Inc. ("Global"), Gong Thach, David Thach, Herr Foods Inc. ("Herr"), Tom Soeung ("Soeung"), as administrator of the estate of Likieng Soeung ("Likieng Soeung"), and Cynthia Brown ("Brown"), individually and as administratrix of the estate of Nathan Royal ("Nathan Royal"), and, for support, alleges the following:

## I.    INTRODUCTION

1.      Nautilus seeks a declaration that it has no duty to defend or indemnify Global, Herr, Gong Thach, and David Thach under a commercial general liability insurance policy ("CGL Policy") and an excess liability insurance policy ("Excess Policy"), both of which Nautilus issued to Global, in connection with the following two underlying civil actions:

    a.    *Tom Soeung, et al. v. Gong Thach, et al.*, Court of Common Pleas, Philadelphia County, No. 191201795 ("Soeung Action"); and

    b.    *Cynthia Brown, et al. v. Herr Foods Incorporated, et al.*, Court of Common Pleas, Philadelphia County, No. 200601058 ("Brown Action").

2.    Both the Soeung Action and the Brown Action arise out of the same October 16, 2019 auto incident in which Likieng Soeung and Nathan Royal were injured and killed as passengers aboard a Ford Econoline E-350 van used to transport them to and/or from Herr's plant in Nottingham, Pennsylvania.

3.    Both Actions allege that Herr hired Global to transport Likieng Soeung and Nathan Royal to and/or from Herr's plant.

4.    Both Actions allege that, in furtherance of its role as Herr's transportation provider, Global transported Likieng Soeung and Nathan Royal in the van, which was allegedly owned by David Thach and operated by Gong Thach at the time of the auto incident.

5.    Both Actions allege facts that, if true, would make David Thach and Gong Thach insureds under the CGL Policy and Excess Policy.

6.    Both Actions allege that Global operated the van through its agents and/or employees, including David Thach and Gong Thach, at the time of the auto incident.

7.    Thus, both the Soeung Action and the Brown Action allege that Likieng Soeung's and Nathan Royal's injuries and deaths arose of the use and/or entrustment to others of an auto owned and/or operated by and/or loaned to "any insured," *i.e.*, Global, Gong Thach, and/or David Thach.

8.    Nautilus is currently defending Global and Herr in the Soeung Action and Brown Action, subject to a reservation of rights to deny or limit coverage, including the right to withdraw from their defense in those Actions.

9.    However, Nautilus does not owe Global, Herr, Gong Thach, and David Thach a defense or indemnity coverage under the CGL Policy and Excess Policy, in connection with the Soeung Action and Brown Action, for a variety of reasons.

10.    Regardless of any other CGL Policy language, some of which is discussed in more detail below, the CGL Policy's "auto" exclusion precludes all coverage, including a defense, for the damages sought in the Soeung Action and Brown Action.

11.    The CGL Policy's "auto" exclusion states, in part, that "[t]he insurance does not apply to ...'[b]odily injury'... arising out of the ownership, maintenance, use or entrustment to others of any ... 'auto' ... owned or operated by or ... loaned to any insured ...."

12.    Also, regardless of any other Excess Policy language, some of which is discussed in more detail below, the Excess Policy's "all autos" exclusion precludes all coverage, including a defense, for the damages sought in the Soeung Action and Brown Action.

13.    The Excess Policy's "all autos" exclusion states that "[t]his insurance does not apply to any injury or damage, costs or expenses arising out of, resulting from, caused or contributed to by the ownership, maintenance, use, loading or unloading or entrustment to others of any auto."

14.    Based on a comparison of the allegations in the Soeung Action and the language of the CGL Policy and Excess Policy, those Policies do not provide coverage, including a defense, for the damages Soeung seeks to impose against Global, Herr, Gong Thach, and David Thach in the Soeung Action.

15.    And, based on a comparison of the allegations in the Brown Action and the language of the CGL Policy and Excess Policy, those Policies do not provide coverage, including

a defense, for the damages Brown seeks to impose against Global, Herr, Gong Thach, and David Thach in the Brown Action.

16.     Thus, Nautilus has no duty under the CGL Policy and Excess Policy to defend or indemnify Global, Herr, Gong Thach, and David Thach in connection with the Soeung Action and Brown Action.

17.     Nautilus seeks a declaration that, because it has no duty to defend or indemnify Global and Herr, Nautilus may withdraw the defense it heretofore has provided to Global and Herr in the Soeung Action and Brown Action.

18.     Nautilus also seeks declarations that it does not owe any money or any other benefit to either Soeung or Brown, under the CGL Policy or the Excess Policy, in connection with the Soeung Action and Brown Action.

## II.    <u>PARTIES</u>

19.     Nautilus is a corporation that is incorporated in the State of Arizona and maintains its principal place of business at 7233 East Butherus Drive, Scottsdale, Arizona 85260.

20.     Upon information and belief, Global Staffing Solution Inc. ("Global") is a corporation organized and existing under the laws of Pennsylvania and maintains its principal place of business in the Commonwealth of Pennsylvania.

21.     Upon information and belief, Herr Foods Incorporated ("Herr") is a corporation organized and existing under the laws of Pennsylvania and maintains its principal place of business in the Commonwealth of Pennsylvania.

22.     Upon information and belief, Gong Thach is a natural person who is domiciled in the Commonwealth of Pennsylvania.

23.    Upon information and belief, David Thach is a natural person who is domiciled in the Commonwealth of Pennsylvania.

24.    Upon information and belief, Tom Soeung ("Soeung") is a natural person who is domiciled in the Commonwealth of Pennsylvania.

25.    Upon information and belief, Cynthia Brown ("Brown") is a natural person who is domiciled in the Commonwealth of Pennsylvania.

## III.    **JURISDICTION**

26.    This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

27.    The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, because, among other reasons, the value of the CGL Policy and Excess Policy under which Global, Herr, Gong Thach, and David Thach seek a defense and/or indemnification from Nautilus exceeds $75,000; the cost of the defense Nautilus is providing Global and Herr would, if Nautilus is obligated to continue that defense, exceed $75,000; and/or the damages awarded in successful trials of the Soeung Action and Brown Action would, individually or collectively, exceed $75,000.

28.    The matter is between citizens of different states.

29.    Nautilus is a citizen of Arizona, where it is incorporated and maintains its principal place of business.

30.    Global is a citizen of Pennsylvania, the state in which it was incorporated and/or maintains its principal place of business.

31.    Herr is a citizen of Pennsylvania, the state in which it was incorporated and/or maintains its principal place of business.

32.    Gong Thach is a citizen of Pennsylvania, the state in which he is domiciled.

33.    David Thach is a citizen of Pennsylvania, the state in which he is domiciled.

34.    Soeung is a citizen of Pennsylvania, the state in which he is domiciled.

35.    Brown is a citizen of Pennsylvania, the state in which she is domiciled.

36.    This Court also has jurisdiction of this matter pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201(a), because this matter presents a case of actual controversy and seeks an order declaring the rights and other legal relations of the parties to this action.

37.    A case of actual controversy is presented here because Global, Herr, Gong Thach, and David Thach seek a defense and/or indemnification under the CGL Policy and/or Excess Policy, in connection with the Soeung Action and Brown Action; and Nautilus disputes that it owes those organizations and individuals duties under those Policies to defend and indemnify them, in connection with those Actions.

## IV.    <u>VENUE</u>

38.    Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b)(1) and (b)(2).

39.    Venue in this District is proper under § 1391(b)(1) because Global, Herr, Gong Thach, David Thach, Soeung, and Brown reside in the Eastern District of Pennsylvania and all are residents of the Commonwealth of Pennsylvania.

40.    Venue is also proper in this District under § 1391(b)(2) because a substantial part of the events or omissions giving rise to Nautilus's claims occurred in the Eastern District of Pennsylvania.

41.    A substantial part of the events or omissions giving rise to Nautilus's claims occurred in the Eastern District of Pennsylvania because the underlying injuries, the underlying trials, the defense Nautilus is providing Global and Herr, from which Nautilus seeks to withdraw, and the underlying judgments, if any, which Nautilus claims are not covered under the CGL Policy and Excess Policy, occurred and/or are still occurring in either Philadelphia County or Chester County, or both, which the Eastern District of Pennsylvania encompasses.

42.    The underlying injuries, damages for which Global, Herr, Gong Thach, and David Thach seek indemnification under the CGL Policy and Excess Policy, occurred in the Eastern District of Pennsylvania because Likieng Soeung and Nathan Royal allegedly sustained bodily injuries and death in New Garden Township, Chester County, Pennsylvania, which the Eastern District of Pennsylvania encompasses.

43.    The Soeung Action and Brown Action, including the trials of those actions, for which Nautilus is providing a defense for Global and Herr, are pending in the Philadelphia County Common Pleas Court, which the Eastern District of Pennsylvania encompasses.

44.    The underlying judgments, if any, for which Global, Herr, Gong Thach, and David Thach seek indemnification under the Nautilus Policies, will be imposed, if ever, by the Philadelphia County Common Pleas Court, which the Eastern District of Pennsylvania encompasses.

## V.    FACTUAL BACKGROUND

### A.    The Soeung Action

45.    Soeung initiated an action, *Tom Soeung, et al. v. Gong Thach, et al.*, Court of Common Pleas, Philadelphia County, No. 191201795 ("Soeung Action"), with a complaint filed on December 11, 2019.

46.    About six months later, Soeung filed an amended complaint on June 10, 2020.

47.    A true and correct copy of Soeung's amended complaint is attached as Exhibit "A."

48.    In his amended complaint, Soeung seeks damages for negligence and under statutes governing wrongful death and survival actions for injuries and death sustained by Likieng Soeung in an October 16, 2019 auto incident.  Soeung Am. Compl., ¶¶ 1-47 (Ex. A).

49.    Soeung alleged, among other things, that Herr hired Global to "recruit, hire, and transport workers to perform work at [Herr's]" plant in Nottingham, Pennsylvania.  *Id.*, ¶ 9 (Ex. A).

50.    Soeung also alleged the following facts about the identity of Gong Thach and David Thach, and the ownership and use of the auto involved in the October 16, 2019 auto incident that allegedly resulted in Likieng Soeung's injuries and death:

> 18.    On or about October 16, 2019, [Gong Thach] and [David Thach] were the agents, ostensible agents, servants and/or employees of [Global].

> 19.    On or about October 16, 2019, [Gong Thach] was driving a 2004 Ford EC-3 van with the permission of the owner of said vehicle, [David Thach].

> 20.    On or about October 16, 2019, [David Thach] was the owner of a 2004 Ford EC-3 van which was involved in an accident hereinafter described.

> 21.    On or about October 16, 2019, [Likieng Soeung] was a passenger in the Ford EC-3 van for the benefit of [Global].

> 22.    On or about October 16, 2019, [Gong Thach] was the agent, ostensible agent, servant and/or employee of [David Thach].

> 23.    At all times relevant hereto, [Gong Thach], [David Thach], and [Global] were acting through their agents, ostensible agents, servants and or employees.

> 24.    On or about October 16, 2019 at or about 2:27 p.m., [Gong Thach] was driving the 2004 Ford EC-3 van south on Route 1, in New Garden Township, when he was caused to lose

> control of the van. The van went off the highway, struck the grass embankment and began overturning a number of times. The van operated by the [Gong Thach] ultimately landed on its roof.
>
> 25.    As a result of the Defendants' conduct, [Likieng Soeung] was caused to sustain injuries resulting in her death.

*Id.*, ¶¶ 18-25 (Ex. A).

51.    In Count I of his amended complaint, Soeung alleged, among other things, that Gong Thach was negligent and his negligence included failures to properly maintain control of and safely operate the van.  Soeung Am. Compl., ¶¶ 28(a)-(k) (Ex. A).

52.    In Count II, Soeung alleged, among other things, that David Thach was negligent and his negligence included failures to properly maintain control of and safely operate the van; and also failures to properly train Gong Thach, to have a training program in place to train drivers, and to properly investigate Gong Thach's driving credentials, as well as to provide safe transportation to Likieng Soeung.  *Id.*, at ¶¶ 31(a)-(s) (Ex. A).

53.    In Count III, Soeung alleged, among other things, that Global was negligent and its negligence, "through its agents, ostensible agents, servant[s] and/or employees," included failures to properly maintain control of and safely operate the van; and also failures to properly train Gong Thach, to have a training program in place to train drivers, and to properly investigate Gong Thach's driving credentials, as well as to provide safe transportation to Likieng Soeung.  *Id.*, at ¶¶ 34(a)-(v) (Ex. A).

54.    In Count IV, Soeung alleged, among other things, that Herr was negligent and its negligence, "through its agents, ostensible agents, servant[s] and/or employees," included a failure to investigate the background of Global prior to hiring Global, a failure to "have appropriate guidelines in place for the hiring of" contractors to provide transportation to individuals to work at Herr's plant, and a failure to properly identify, vet, and screen individuals, including Gong

Thach, who would provide transportation to individuals to work at Herr's plant. *Id.*, at ¶¶ 37(a)-(q) (Ex. A).

55.　Additionally, Soeung asserted in a count titled "First Cause of Action" his entitlement to damages under Pennsylvania's Wrongful Death Act. *Id.*, at ¶¶ 39-43 (Ex. A).

56.　Soeung asserted in another count titled "Second Cause of Action" his entitlement to damages under Pennsylvania's Survival Statute. *Id.*, at ¶¶ 44-47 (Ex. A).

### B.　**The Brown Action**

57.　Brown initiated an action, *Cynthia Brown, et al. v. Herr Foods Incorporated, et al.*, Court of Common Pleas, Philadelphia County, No. 200601058 ("Brown Action"), with a complaint filed on June 19, 2020.

58.　A true and correct copy of Brown's complaint is attached as Exhibit "B."

59.　In her complaint, Brown seeks damages for negligence and under statutes governing wrongful death and survival actions for injuries and death sustained by Nathan Royal in the same October 16, 2019 auto incident described in the Soeung Action. Brown Compl., ¶¶ 1-89 (Ex. B).

60.　Like Soeung in the Soeung action, Brown alleged that Herr hired Global to "provide a method of transportation for workers, including Nathan Royal, to Herr's plant in Nottingham, Pennsylvania." *Id.*, ¶ 17 (Ex. B).

61.　Brown, like Soeung, also alleged the following facts about the identity of Gong Thach and David Thach, and the ownership and use of the auto involved in the October 16, 2019 auto incident that allegedly resulted in Nathan Royal's injuries and death:

> 57.　On or about October 16, 2019, [Nathan Royal] was scheduled to work at the Herr's plant in Nottingham for a shift that started at 3:30 p.m.

58.     In the afternoon of October 16, 2019, [Nathan Royal] arrived
        at [Global's] headquarters in Philadelphia to be transported
        to the Herr's plant.

59.     On or about October 16, 2019, defendants, Gong Thach,
        Reagan Thach, Nissan Thach, and David Thach, were the
        agents, ostensible agents, apparent agents, servants and/or
        employees of [Global], acting within the course and scope of
        their employment and/or agency relationship with [Global].

60.     At all times relevant hereto, defendants, Gong Thach, David
        Thach, Reagan Thach, Nissan Thach, [Global], and Herr
        Foods Incorporated, were acting by and through their agents,
        ostensible agents, apparent agents, servants and/or
        employees.

61.     On October 16, 2019, [Nathan Royal] was a passenger in a
        2004 Ford Econoline E-350 ... that was owned by defendant,
        David Thach, and operated by defendant, Gong Thach.

62.     While operating this vehicle travelling southbound on Route
        1 in New Garden Township, Pennsylvania, defendant, Gong
        Thach, recklessly, negligently, and carelessly operated the
        vehicle so as to veer off the roadway, causing the vehicle to
        strike a sign, roll over a number of times, and ultimately land
        upside down on its roof.

63.     As a result of the traumatic impact of the automobile crash,
        three people, including [Nathan Royal], were killed, and
        numerous other people were injured.

Brown Compl., ¶¶ 57-63 (Ex. B).

62.     In Count I of her complaint, Brown alleged, among other things, that Herr was

negligent and its negligence included "[n]egligent selection of [Global] as a transporter of

Philadelphia-resident workers to the Herr's plant"; a "[f]ailure to adequately vet, audit, interview,

and review [Global] prior to retaining [Global] as a company and/or contractor to transport

Philadelphia-resident workers, including [Decedent] to the Herr's plant"; a [f]ailure to adequately,

timely, and properly inspect, monitor, and supervise the driving records of all persons who drove"

workers, including Nathan Royal, to Herr's plant; and a "[f]ailure to take the special precautions,

as specifically outlined throughout this Complaint, to ensure that [Global] was a safe and competent provider of transportation of Philadelphia-resident workers, including [Nathan Royal], to the Herr's plant despite that Herr's knew or should have known that daily vehicular transportation (twice per day), of numerous Philadelphia-resident workers, including [Nathan Royal], from the [Global] headquarters in Philadelphia to the Herr's plant was likely to create a peculiar risk of physical harm unless these special precautions were taken." *Id.*, ¶¶ 66(a)-(kk) (Ex. B).

63.    In Count II, Brown alleged, among other things, that Global was negligent and its negligence included "[p]ermitting [Gong Thach] to provide transportation for Philadelphia-resident workers, including [Nathan Royal], to the Herr's plant"; "[n]egligent selection, retention, and supervision of [Gong Thach] as a driver of Philadelphia-resident workers, including [Nathan Royal], to and from the Herr's plant and [Global's] headquarters"; "[f]ailure to exercise, with reasonable care, its control over the supervision of [Gong Thach] as a driver of Philadelphia-resident workers to and from the Herr's plant and [Global's] headquarters"; "[v]icarious liability for the negligence of its agents and/or employees, including Gong Thach, David Thach, Nissan Thach, and Reagan Thach, as factually averred throughout this Complaint"; and "[f]ailure to ensure that any persons, including [Nathan Royal], were safely transported to and from the Herr's plant and [Global's] headquarters." *Id.*, ¶¶ 69(a)-(dd) (Ex. B).

64.    In Count III, Brown alleged, among other things, that Gong Thach was negligent and his negligence included negligent operation of the auto involved in the October 16, 2019 incident. *Id.*, ¶¶ 72(a)-(k) (Ex. B).

65.    In Count IV, Brown alleged, among other things, that David Thach was negligent and his negligence included "[n]egligently entrusting his vehicle to be used by [Gong Thach] to

transport workers, including [Nathan Royal], to and from the Herr's plant and [Global] headquarters, despite knowing that [Gong Thach] was an unsafe and reckless driver"; "[f]ailing to prohibit [Gong Thach] from operating his vehicle"; and "[f]ailure to properly and adequately train [Gong Thach] prior to permitting him to use his vehicle[.]" *Id.*, ¶¶ 75(a)-(g) (Ex. B).

66.     Additionally, Brown asserted in a count titled "First Cause of Action" her entitlement to damages under Pennsylvania's Wrongful Death Act.  Brown Compl., ¶¶ 77-83 (Ex. B).

67.     Soeung asserted in another count titled "Second Cause of Action" his entitlement to damages under Pennsylvania's Survival Statute.  *Id.*, at ¶¶ 84-89 (Ex. B).

**C.     The CGL Policy**

68.     Nautilus issued to Global a commercial lines insurance policy, NC745680, effective January 8, 2019 to January 8, 2020, which provides certain commercial general liability insurance coverage ("CGL Policy").

69.     A true and correct copy of the CGL Policy, Bates numbered NAUTILUS_00001-58, is attached as Exhibit "C."

70.     The CGL Policy provides, in part, the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and....

                          * * *

    e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of

services or death resulting at any time from the "bodily injury".

* * *

2.  Exclusions

This insurance does not apply to:

* * *

g.  Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured....

* * *

SECTION II – WHO IS AN INSURED

* * *

1.  If you are designated in the Declarations as:

* * *

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

2.  Each of the following is also an insured:

a.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees",

15

other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business....

\* \* \*

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\* \* \*

7.  Separation Of Insureds

    Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    a.  As if each Named Insured were the only Named Insured; and

    b.  Separately to each insured against whom claim is made or "suit" is brought.

\* \* \*

SECTION V – DEFINITIONS

\* \* \*

2.  "Auto" means:

    a.  A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment".

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13 "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

See CG 00 01 04 13, pp. 1-15 of 16 (Ex. C) (NAUTILUS_00012-26).

71.     The CGL Policy has an endorsement, titled ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION, which modifies Section II – Who Is An Insured as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

\* \* \*

A.  Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1.  In the performance of your ongoing operations; or

2.  In connection with your premises owned by or rented to you.

\* \* \*

See CG 20 26 04 13, p. 1 of 1 (Ex. C) (NAUTILUS_00028).

72.     The organization shown in the ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION endorsement's Schedule is "Herr Foods, Inc., 20 Herr Drive, Nottingham, PA 19362." *Id.* (Ex. C) (NAUTILUS_00028).

**D.     The Excess Policy**

73.     Nautilus also issued to Global an excess liability policy, No. AN065465, effective March 26, 2019 to January 8, 2020, which provides certain excess liability insurance coverage ("Excess Policy").

17

74.     A true and correct copy of the Excess Policy, Bates numbered NAUTILUS_00059-83, is attached as Exhibit "D."

75.     The Excess Policy provides, in part, the following:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section IV– Definitions and relevant references in the text of this policy.

SECTION I - EXCESS LIABILITY COVERAGE

1.  Insuring Agreement

    a.  We will pay on behalf of the "insured" the "ultimate net loss" in excess of the "underlying insurance limit" because of injury or damage caused by a "loss event" to which this insurance applies provided:

        (1) The aggregate amount of all limits of "Underlying Insurance", as shown in the Schedule of "Underlying Insurance", has been exhausted by payment of judgments, settlements, costs or expenses; and

        (2) The "loss event" occurs or is committed during the policy period.

        However, this insurance does not apply to:

        (a) Any sums for which the "insured" is legally liable, costs or expenses arising out of, caused by or contributed to by any injury or damage, whether such injury or damage is known or unknown:

            (i)  Which first occurred prior to the inception date of this policy; or

            (ii) Which are, or are alleged to be, in the process of occurring or being committed as of the inception date of the policy even if the injury or damage continues

18

to occur or continues to be committed during this policy period.

(b) Any sums for which the "insured" is legally liable, costs or expenses arising out of or related to any injury or damage, whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy.

b. Except to the extent any terms, definitions, limits of insurance, conditions or exclusions of the "controlling underlying insurance" are different from any terms, definitions, limits of insurance, conditions or exclusions of this policy, this policy will provide the same coverage for "ultimate net loss" as provided by the "controlling underlying insurance". If any terms, definitions, limits of insurance, conditions or exclusions of this policy are more restrictive than those of the "controlling underlying insurance", then this policy's terms, definitions, limits of insurance, conditions or exclusions will apply. However, under no circumstance will this policy provide broader coverage than that provided by the "underlying insurance".

c. The amount we will pay for the "ultimate net loss" is limited as described in Section II – Limits of Insurance.

2. Defense

a. We will have no duty to investigate or defend any claim or "suit". We will have the right and be given the opportunity to associate with any "insured" or "underlying insurer" in the investigation, settlement or defense of any claim or "suit" that may involve this insurance.

b. At our discretion, we may investigate and settle any claim or "suit".

\* \* \*

SECTION IV – DEFINITIONS

1. "Controlling underlying insurance" means the policy or policies that are indicated as such on the Schedule Of "Underlying Insurance".

\* \* \*

4. "Insured" means any person or organization qualifying as such under the "controlling underlying insurance".

5. "Loss Event" means the happening, situation or circumstance that initiates the application of the "underlying insurance" as designated in the Schedule of "Underlying Insurance".

6. "Named Insured" means the entity(ies) or individual(s) named in the Declarations.

* * *

8. "Ultimate net loss":

   a. Means the total sum, after reduction for recoveries or salvages collectible, that the "insured" becomes legally obligated to pay by reason of a judgment against the "insured" after actual trial, or alternative dispute resolution by written agreement of the "insured", the claimant or the claimant's legal representative and us;

   b. Includes the costs of attorneys fees in defending any claim or "suit" incurred by any "underlying insurer" if such costs are included within the limits of insurance of the "underlying insurance". However, these costs do not include salaries and expenses of employees or regular officials of the "underlying insurer" or the "insured"; and

   c. Includes all interest on judgments paid by the "insured" or any "underlying insurer".

9. "Underlying insurance" means the coverage(s) afforded under insurance policies, for the limits shown, as designated in the Schedule of "Underlying Insurance", and any renewals or replacements of those policies. Policies endorsements or coverages written on a claims-made policy form will not be considered "underlying insurance."

10. "Underlying insurance limit" means the sum of amounts applicable to any claim or "suit" from:

   a. "Underlying insurance", whether such "underlying insurance" is collectible or not;

   b. Other insurance; whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limits of Insurance; and

c. Any applicable self-insured retention or deductible.

"Underlying insurance limit" does not include limits of policies, coverages and endorsements written on a claims-made policy form.

11. "Underlying insurer" means any insurer who provides any policy or coverages of "underlying insurance".

\* \* \*

<u>See</u> NE 00 31 04 10, pp. 1-11 of 11 (Ex. D) (NAUTILUS_00063-73).

76.    The Excess Policy's SCHEDULE OF "UNDERLYING INSURANCE" identifies the CGL Policy as the "underlying insurance."    <u>See</u> DE2510 10 14, p. 1 of 1 (Ex. D) (NAUTILUS_00061).

77.    The Excess Policy contains an endorsement, titled EXCLUSION – ALL AUTOS, which modifies the Excess Policy by adding the following exclusion:

This insurance does not apply to any injury or damage, costs or expenses arising out of, resulting from, caused or contributed to by the ownership, maintenance, use, loading or unloading or entrustment to others of any auto.

\* \* \*

<u>See</u> NE 00 72 10 14, p. 1 of 1 (Ex. D) (NAUTILUS_00076).

**E.    <u>Nautilus's Defense Of Global And Herr In The Soeung And Brown Actions</u>**

78.    Global and Herr separately requested that Nautilus defend and indemnify them under the CGL Policy and/or Excess Policy, in connection with the Soeung Action and Brown Action.

79.    In response, Nautilus informed Global and Herr, in separate letters, that Nautilus believed that the CGL Policy and Excess Policy do not provide coverage, including a defense, for the damages sought in the Soeung Action and Brown Action.

80.     However, even though the Policies do not provide coverage for the damages sought in the Actions, Nautilus nevertheless offered to provide Global and Herr a defense in the Actions, under only the CGL Policy, subject to a full reservation of rights.

81.     Nautilus declined to provide Global and Herr a defense in the Actions, under the Excess Policy, and reserved all rights under the Excess Policy to further deny or limit coverage, including a defense, to Global and Herr, in connection with the Actions.

82.     As part of its offer of a defense to Global and Herr, Nautilus reserved all rights under the CGL Policy to deny or limit coverage, including to seek a declaration regarding Nautilus's obligations, if any, under the Policies, and to seek a declaration that Nautilus may withdraw from the defense of Global and Herr, in connection with the Soeung Action and Brown Action.

83.     Global and Herr accepted Nautilus's offer of a defense under the CGL Policy pursuant to Nautilus's reservation of rights.

84.     As of the time this complaint is being filed, Nautilus is continuing to defend Global and Herr in the Actions, under the CGL Policy, pursuant to a reservation of rights.

**F.      Nautilus's Declination Of Coverage, Including A Defense, For Gong Thach And David Thach**

85.     Nautilus is not defending Gong Thach or David Thach in either the Soeung Action or Brown Action.

86.     Upon information and belief, Gong Thach and David Thach are being defended in those Actions by an auto insurance company, which insured David Thach under an auto insurance policy, which was in effect at the time of the alleged October 16, 2019 auto incident, and which provides certain defense and indemnity coverage for Gong Thach and David Thach and/or for the Ford Econoline E-350 van allegedly involved in the October 16, 2019 incident.

87.     After the Soeung Action and Brown Action were initiated, Nautilus informed Gong Thach and David Thach that Nautilus denied coverage to them under both the CGL Policy and Excess Policy.

## VI.    DEMAND FOR RELIEF

88.     Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, Nautilus is entitled to a judicial determination concerning the parties' rights and obligations, if any, under the CGL and Excess Policy, in connection with the Soeung Action and Brown Action, for the reasons explained in each of the successive Counts seeking relief.

## COUNT I – DECLARATORY JUDGMENT

### Nautilus Has No Duty Under The CGL Policy To Defend Or Indemnify Global, Herr, Gong Thach, and David Thach In The Soeung Action

89.     Nautilus incorporates by reference all of the allegations above, as though they were set forth in this demand for relief.

90.     The CGL Policy states, in SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, that Nautilus will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'...to which [the] insurance applies," except that Nautilus "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury'...to which the insurance does not apply." *See* CG 00 01 04 13, p. 1 of 16 (Ex. C) (NAUTILUS_00012).

91.     The CGL Policy also states, in SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, that "[t]his insurance does not apply to...'[b]odily injury'...arising out of the...use or entrustment to others of any...'auto'...owned or operated by...or loaned to any insured." *See* CG 00 01 04 13, p. 4 of 16 (Ex. C) (NAUTILUS_00015).

92.     The Soeung Action alleges "bodily injury," as defined and used in the CGL Policy, because it alleges "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."   *See* CG 00 01 04 13, p. 13 of 16 (Ex. C) (NAUTILUS_00024).

93.     The bodily injury, including death of Likieng Soeung, described in the Soeung Action arose out of the use of a Ford Econoline E-350 van.

94.     The bodily injury, including death of Likieng Soeung, described in the Soeung Action arose out of the entrustment to others of a Ford Econoline E-350 van.

95.     The Ford Econoline E-350 van allegedly involved in the incident described in the Soeung Action constitutes an "auto," as defined and used in the CGL Policy, because it was a "[a] land motor vehicle ... designed for travel on public roads ...."   *See* CG 00 01 04 13, p. 13 of 16 (Ex. C) (NAUTILUS_00024).

96.     Upon information and belief, the Ford Econoline E-350 van allegedly involved in the incident described in the Soeung Action was, at the time of the incident, owned by David Thach.

97.     According to the Soeung Action, at the time of the incident David Thach was an "employee" and/or "servant" of Global acting within the scope of his employment by Global and/or while performing duties related to the conduct of Global's business.

98.     If that allegation is true, then David Thach was an insured under the CGL Policy, even though coverage is excluded for the reasons discussed herein.  Alternatively, if that allegation is not true, then David Thach is not an insured to the CGL Policy.  Either way, David Thach is not entitled to coverage.

99.     The Ford Econoline E-350 van involved in the incident described in the Soeung Action was, at the time of the incident, allegedly operated by Gong Thach.

100.    According to the Soeung Action, at the time of the incident Gong Thach was an "employee" and/or "servant" of Global acting within the scope of his employment by Global and/or while performing duties related to the conduct of Global's business.

101.    If that allegation is true, then Gong Thach was an insured under the CGL Policy, even though coverage is excluded for the reasons discussed herein.  Alternatively, if that allegation is not true, then Gong Thach is not an insured to the CGL Policy.  Either way, Gong Thach is not entitled to coverage.

102.    The Ford Econoline E-350 van was, at the time of the incident, operated by Global, because the Soeung Action alleges that the van was operated by Gong Thach; that Gong Thach was operating the van as an agent, an ostensible agent, a servant, and/or an employee of Global; and that Global was acting through its agents, ostensible agents, servants, and/or employees.

103.    The Ford Econoline E-350 was, at the time of the incident, allegedly loaned to Global.

104.    The Soeung Action alleges that the van was owned by David Thach; that Gong Thach was operating the van with David Thach's permission and as an agent, an ostensible agent, a servant, and/or an employee of Global; and that Global was acting through its agents, ostensible agents, servants, and/or employees.

105.    Global was, at the time of the incident described in the Soeung Action, an insured under the CGL Policy, because Global was the named insured under the CGL Policy and/or was designated in the CGL Policy's Declarations as an organization other than a partnership, joint venture, or limited liability company.

106.    Based on the allegations in the Soeung Action, the CGL Policy's "auto" exclusion applies to the damages sought against Global, Herr, Gong Thach, and David Thach in the Soeung Action, because the damages are because of "bodily injury" that arose out of the use and/or entrustment to others of an "auto" owned and/or operated by and/or loaned to any insured — *i.e.*, Global, Herr, Gong Thach, and/or David Thach.

107.    Thus, Nautilus has no duty under the CGL Policy to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with the Soeung Action, because the CGL Policy's "auto" exclusion precludes all coverage, including a defense, for them for the damages sought in the Soeung Action.

108.    There are, or may be, depending on the outcome of the Soeung Action, other reasons why Global, Herr, Gong Thach, and/or David Thach are not entitled to a defense and/or indemnity coverage under the CGL Policy, in connection with the Soeung Action, including but not limited to by operation of other applicable terms, conditions, exclusions, and limitations, including those not quoted or discussed herein, such as those related to whether coverage, if any, under the CGL Policy is excess other insurance available to Global, Herr, Gong Thach, and/or David Thach.

109.    Nautilus is therefore entitled to a declaration that it has no duty under the CGL Policy to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with the Soeung Action.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

(a)    Declaring that, under the CGL Policy, Nautilus has no duty to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with the Soeung Action;

(b)    Declaring that, because Nautilus has no duty to defend or indemnify Global and Herr, Nautilus is entitled to withdraw the defense it heretofore has provided Global and Herr in the Soeung Action; and

26

(c)     Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## <u>COUNT II – DECLARATORY JUDGMENT</u>

### <u>Nautilus Has No Duty Under The Excess Policy To Defend Or Indemnify Global, Herr, Gong Thach, and David Thach In The Soeung Action</u>

110.    Nautilus incorporates by reference all of the allegations above, as though they were set forth in this demand for relief.

111.    The Excess Policy states, in the EXCLUSION – ALL AUTOS endorsement, that "[t]his insurance does not apply to any injury or damage, costs or expenses arising out of, resulting from, caused or contributed to by the ownership, maintenance, use, loading or unloading or entrustment to others of any auto."  *See* NE 00 72 10 14, p. 1 of 1 (Ex. D) (NAUTILUS_00076).

112.    Based on the foregoing, the Excess Policy's "all autos" exclusion applies to the damages sought against Global in the Soeung Action because the damages arose out of and/or resulted from and/or were caused by and/or were contributed to by the ownership, maintenance, use, loading or unloading or entrustment to others of any auto.

113.    Thus, Nautilus has no duty under the Excess Policy to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with the Soeung Action, because the Excess Policy's "all autos" exclusion precludes all coverage, including a defense, for them for the damages sought in the Soeung Action.

114.    There are, or may be, depending on the outcome of the Soeung Action, other reasons why Global, Herr, Gong Thach, and David Thach are not entitled to a defense and/or indemnity coverage under the Excess Policy, in connection with the Soeung Action, including but not limited to by operation of other applicable terms, conditions, exclusions, and limitations, including those not

quoted or discussed herein, such as those related to whether coverage, if any, under the Excess Policy is excess other insurance available to Global, Herr, Gong Thach, and/or David Thach.

115.    Nautilus is therefore entitled to a declaration that it has no duty under the Excess Policy to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with the Soeung Action.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

(a)    Declaring that, under the Excess Policy, Nautilus has no duty to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with the Soeung Action; and

(b)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT

### Nautilus Does Not Owe Soeung Any Money Or Any Other Benefit Under The CGL Policy And Excess Policy

116.    Nautilus incorporates by reference all of the allegations above, as though they were set forth in this demand for relief.

117.    Soeung claims to have a pecuniary or other interest in the outcome of this action.

118.    Soeung is not an insured under the CGL Policy and Excess Policy.

119.    There is no language in the CGL Policy and Excess Policy under which Soeung is entitled to any money or any other benefit.

120.    Nautilus does not owe a defense or indemnity coverage, under the CGL Policy and Excess Policy, to either Global, Herr, Gong Thach, or David Thach, for the reasons explained above.

121.    Thus, Nautilus does not owe Soeung any money or any other benefit under the CGL Policy and Excess Policy, in connection with the Soeung Action, even if Soeung were to recover

damages against and/or settle Soeung's claims with Global, Herr, Gong Thach, and/or David Thach in the Soeung Action.

122.    Nautilus is therefore entitled to a declaration that it does not owe Soeung any money or any other benefit under the CGL Policy and Excess Policy, in connection with the Soeung Action.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

(a)    Declaring that Nautilus does not owe Soeung any money or any other benefit under the CGL Policy and Excess Policy, in connection with the Soeung Action; and

(b)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## COUNT IV – DECLARATORY JUDGMENT

### Nautilus Has No Duty Under The CGL Policy To Defend Or Indemnify Global, Herr, Gong Thach, and David Thach In The Brown Action

123.    Nautilus incorporates by reference all of the allegations above, as though they were set forth in this demand for relief.

124.    The CGL Policy states, in SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, that Nautilus will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'...to which [the] insurance applies," except that Nautilus "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury'...to which the insurance does not apply."  *See* CG 00 01 04 13, p. 1 of 16 (Ex. C) (NAUTILUS_00012).

125.    The CGL Policy also states, in SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, that "[t]his insurance does not apply to...'[b]odily injury'...arising out of the...use or entrustment to others of

29

any...'auto'...owned or operated by...or loaned to any insured." *See* CG 00 01 04 13, p. 4 of 16 (Ex. C) (NAUTILUS_00015).

126.    The Brown Action alleges "bodily injury," as defined and used in the CGL Policy, because it alleges "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *See* CG 00 01 04 13, p. 13 of 16 (Ex. C) (NAUTILUS_00024).

127.    The bodily injury, including death of Nathan Royal, described in the Brown Action arose out of the use of a Ford Econoline E-350 van.

128.    The bodily injury, including death of Nathan Royal, described in the Brown Action arose out of the entrustment to others of a Ford Econoline E-350 van.

129.    The Ford Econoline E-350 van allegedly involved in the incident described in the Brown Action constitutes an "auto," as defined and used in the CGL Policy, because it was a "[a] land motor vehicle...designed for travel on public roads...." *See* CG 00 01 04 13, p. 13 of 16 (Ex. C) (NAUTILUS_00024).

130.    The Ford Econoline E-350 van allegedly involved in the incident described in the Brown Action was, at the time of the incident, allegedly owned by David Thach.

131.    According to the Brown Action, at the time of the incident David Thach was an "employee" and/or "servant" of Global acting within the scope of his employment by Global and/or while performing duties related to the conduct of Global's business.

132.    If that allegation is true, then David Thach was an insured under the CGL Policy, even though coverage is excluded for the reasons discussed herein. Alternatively, if that allegation is not true, then David Thach is not an insured to the CGL Policy. Either way, David Thach is not entitled to coverage.

133.    The Ford Econoline E-350 van allegedly involved in the incident described in the Brown Action was, at the time of the incident, allegedly operated by Gong Thach.

134.    According to the Brown Action, at the time of the incident Gong Thach was an "employee" and/or "servant" of Global acting within the scope of his employment by Global and/or while performing duties related to the conduct of Global's business.

135.    If that allegation is true, then Gong Thach was an insured under the CGL Policy, even though coverage is excluded for the reasons discussed herein.  Alternatively, if that allegation is not true, then Gong Thach is not an insured to the CGL Policy.  Either way, Gong Thach is not entitled to coverage.

136.    The Ford Econoline E-350 van allegedly involved in the incident described in the Brown Action was, at the time of the incident, allegedly operated by Global, because the Brown Action alleges that the van was operated by Gong Thach; that Gong Thach was operating the van as an agent, an ostensible agent, an apparent agent, a servant, and/or an employee of Global; and that Global was acting by and through its agents, ostensible agents, apparent agents, servants, and/or employees.

137.    The Ford Econoline E-350 van allegedly involved in the incident described in the Brown Action was, at the time of the incident, allegedly loaned to Global, because the Brown Action alleges that the van was owned by David Thach; that Gong Thach was operating the van as an agent, an ostensible agent, an apparent agent, a servant, and/or an employee of Global; and that Global was acting by and through its agents, ostensible agents, apparent agents, servants, and/or employees.

138.    Global was, at the time of the incident described in the Brown Action, an insured under the CGL Policy, because Global was the named insured under the CGL Policy and/or was

designated in the CGL Policy's Declarations as an organization other than a partnership, joint venture, or limited liability company.

139.    Based on the allegations in the Brown Action, the CGL Policy's "auto" exclusion applies to the damages sought against Global in the Brown Action because the damages are because of "bodily injury" that arose out of the use and/or entrustment to others of an "auto" owned and/or operated by and/or loaned to any insured — *i.e.*, Global, Herr, Gong Thach, and/or David Thach.

140.    Thus, Nautilus has no duty under the CGL Policy to defend or indemnify Global, in connection with the Brown Action, because the CGL Policy's "auto" exclusion precludes all coverage, including a defense, for them for the damages sought in the Brown Action.

141.    There are, or may be, depending on the outcome of the Brown Action, other reasons why Global, Herr, Gong Thach, and David Thach are not entitled to a defense and/or indemnity coverage under the CGL Policy, in connection with the Brown Action, including but not limited to by operation of other applicable terms, conditions, exclusions, and limitations, including those not quoted or discussed herein, such as those related to whether coverage, if any, under the CGL Policy is excess other insurance available to Global, Herr, Gong Thach, and/or David Thach.

142.    Nautilus is therefore entitled to a declaration that it has no duty under the CGL Policy to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with the Brown Action.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

(a)    Declaring that, under the CGL Policy, Nautilus has no duty to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with the Brown Action;

(b)    Declaring that, because Nautilus has no duty to defend or indemnify Global and Herr, Nautilus is entitled to withdraw the defense it heretofore has provided Global and Herr in the Brown Action; and

32

    (c)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## <u>COUNT V – DECLARATORY JUDGMENT</u>

### <u>Nautilus Has No Duty Under The Excess Policy To Defend Or Indemnify Global, Herr, Gong Thach, And David Thach In The Brown Action</u>

143.    Nautilus incorporates by reference all of the allegations above, as though they were set forth in this demand for relief.

144.    The Excess Policy states, in the EXCLUSION – ALL AUTOS endorsement, that "[t]his insurance does not apply to any injury or damage, costs or expenses arising out of, resulting from, caused or contributed to by the ownership, maintenance, use, loading or unloading or entrustment to others of any auto."  *See* NE 00 72 10 14, p. 1 of 1 (Ex. D) (NAUTILUS_00076).

145.    Based on the foregoing, the Excess Policy's "all autos" exclusion applies to the damages sought against Global in the Brown Action because the damages arose out of and/or resulted from and/or were caused by and/or were contributed to by the ownership, maintenance, use, loading or unloading or entrustment to others of any auto.

146.    Thus, Nautilus has no duty under the Excess Policy to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with the Brown Action, because the Excess Policy's "all autos" exclusion precludes all coverage, including a defense, for them for the damages sought in the Brown Action.

147.    There are, or may be, depending on the outcome of the Brown Action, other reasons why Global, Herr, Gong Thach, and David Thach are not entitled to a defense and/or indemnity coverage under the Excess Policy, in connection with the Brown Action, including but not limited to by operation of other applicable terms, conditions, exclusions, and limitations, including those not

quoted or discussed herein, such as those related to whether coverage, if any, under the Excess Policy

is excess other insurance available to Global, Herr, Gong Thach, and/or David Thach.

148.    Nautilus is therefore entitled to a declaration that it has no duty under the Excess

Policy to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with

the Brown Action.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

    (a)    Declaring that, under the Excess Policy, Nautilus has no duty to defend or indemnify Global, Herr, Gong Thach, and David Thach, in connection with the Brown Action; and

    (b)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## COUNT VI – DECLARATORY JUDGMENT

### Nautilus Does Not Owe Brown Any Money Or Any Other Benefit Under The CGL Policy And Excess Policy

149.    Nautilus incorporates by reference all of the allegations above, as though they were

set forth in this demand for relief.

150.    Brown claims to have a pecuniary or other interest in the outcome of this action.

151.    Brown is not an insured under the CGL Policy and Excess Policy.

152.    There is no language in the CGL Policy and Excess Policy under which Brown is

entitled to any money or any other benefit.

153.    Nautilus does not owe a defense or indemnity coverage, under the CGL Policy and

Excess Policy, to either Global, Herr, Gong Thach, or David Thach, for the reasons explained above.

154.    Thus, Nautilus does not owe Brown any money or any other benefit under the CGL

Policy and Excess Policy, in connection with the Brown Action, even if Brown were to recover

damages against and/or settle Brown's claims with Global, Herr, Gong Thach, and/or David Thach in the Brown Action.

155.    Nautilus is therefore entitled to a declaration that it does not owe Brown any money or any other benefit under the CGL Policy and Excess Policy, in connection with the Brown Action.

**WHEREFORE**, Nautilus respectfully requests that this Court enter an Order:

(a)    Declaring that Nautilus does not owe Brown any money or any other benefit under the CGL Policy and Excess Policy, in connection with the Brown Action; and

(b)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Nautilus hereby demands a trial by jury of issues so triable.

**WHITE AND WILLIAMS LLP**

Dated:    August 12, 2020            BY:        *s/ Anthony L. Miscioscia*
                                            Anthony L. Miscioscia (PA ID # 69215)
                                            Timothy A. Carroll (PA ID # 318907)
                                            1650 Market Street, Suite 1800
                                            Philadelphia, PA 19103-7395
                                            (215) 864 6356/6218
                                            *Attorneys for Plaintiff,*
                                            *Nautilus Insurance Company*