**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NAUTILUS INSURANCE COMPANY,** *Plaintiff* | : | |
| v. | : | **CIVIL ACTION** No. 20-03937-JMY |
| **GLOBAL STAFFING SOLUTIONS, INC., et al.,** *Defendants* | : | |

**MEMORANDUM**

**Younge, J.** **August 5, 2026**

## I. INTRODUCTION

Plaintiff Nautilus Insurance Company ("Nautilus") has filed this Declaratory Judgment action against Defendants Global Staffing Solutions, Inc. ("Global") and Gong Thach, seeking a ruling that Nautilus has neither a duty to defend nor indemnify Global and Gong Thach for claims asserted against them in a consolidated state court civil action ("Underlying Actions") brought on behalf of an injured party and decedent representatives ("Claimants"). In the Underlying Actions, Claimants brought claims for negligence, wrongful death, and survival action against Global and Gong Thach, among others. Before the Court is Nautilus' Motion for Summary Judgment (ECF No. 246) and Claimants' Response in Opposition to Nautilus' Motion for Summary Judgment (ECF No. 256) pursuant to Federal Rule of Civil Procedure 56(a). The Court finds this motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Nautilus' Motion is Granted.[1]

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

## II. FACTUAL BACKGROUND

The following undisputed facts are material to the disposition of the present motion and shall be deemed agreed to by the extensive record. On August 12, 2020, Nautilus brought this declaratory judgment action arguing that it has neither a duty to defend nor indemnify Global Staffing Solutions, Inc. ("Global"), Gong Thach and others under the commercial general liability policy or the excess liability policy ("Nautilus Policies") issued to Global. *See* (ECF No. 1.) Nautilus' motion concerns three underlying civil actions (hereinafter "Underlying Actions") asserted against Global, Gong Thach, and others. *See* Third Am. Compl. (ECF No. 201); *Cynthia Brown, Administrator of the Estate of Nathan Royal v. Gong Thach, et al.*, Pennsylvania Court of Common Pleas, Philadelphia County, No. 200601058 (the "Brown Action"); *Ordom Huot, Individually and as Administrator of the Estate of Jennifer Huot v. Herr Foods, Inc., et al.*, Pennsylvania Court of Common Pleas, Philadelphia County, No. 210300367 (the "Huot Action"); and *Soeup Dy v. Herr Foods, Inc., et al.*, Pennsylvania Court of Common Pleas, Philadelphia County, No. 211000157 (the "Dy Action").

This matter, and the Underlying Actions, arises out of a motor vehicle crash that occurred on October 16, 2019 ("Auto Accident") that resulted in the death and/or serious bodily injury to numerous passengers in the vehicle. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240). The vehicle was a Ford Econoline E-350 passenger van ("Vehicle") being operated by Gong Thach. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240). The passengers were Soeup Dy, Jennifer Huot (represented by Ordom Huot) and Nathan Royal (represented by Cynthia Brown) (collectively known as "Claimants"). *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240). Gong Thach was transporting Claimants to the

Herr's manufacturing facility ("Herr Facility") in Nottingham, Pennsylvania when he lost control of the vehicle driving on a public highway in the rain. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240). At the time of the Auto Accident, Gong Thach and Claimants were employees of Global. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240). As a result of the Auto Accident, Jennifer Huot and Nathan Royal died, and Claimant Dy suffered severe injuries. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240). Claimants, thereafter, each asserted claims against Global, Gong Thach and others, and sought damages arising from the Auto Accident. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240).

Claimants alleged that Nautilus insured Global, and its employees, at the time of the Auto Accident under the Nautilus Policies. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240). Since Global was purportedly at fault for the deaths and serious bodily injury of Claimants, Claimants contend that Nautilus should also be held liable for Global's actions. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240). Nautilus, however, rejects Claimants allegations by relying on the terms of the Nautilus Policies, as outlined below. (ECF No. 246.) This case is compelling because Global is a "temporary employment agency" that had a contract to provide, for all intents and purposes, assembly-line workers for Herr and the Herr Facility, a well-known snack foods company. In fact, their products were in high demand, necessitating a production schedule that ran around the clock. The factory never closed, running on a twenty-four-hour schedule. As is common throughout the industry where workers are paid very little, "call outs" and "no shows" are frequent. To avoid production delays, Herr contracted with Global to supply temporary

workers for the Herr Facility and to transport them to and from the Herr Facility. Once these workers were secured, Global would transport them to the plant no matter the time of day.

On October 16, 2019, the accident occurred while Gong Thach transported the Claimants to/from the Herr Facility. Although Herr has suggested throughout this litigation that it had no responsibility for the accident, it clearly relied on Global to not only find, but also to transport these workers to the Herr Facility, many of whom were recent immigrants to this country and many of whom did not even speak English, much less understand how to get to rural Chester County, Pennsylvania at any hour of a given day.

Accordingly, Claimants brought the Underlying Actions claims before the Philadelphia Court of Common Pleas where trial commenced on October 28, 2024. *See* (Ex. 3, ECF No. 246.) The jury returned a verdict in favor of Claimants, finding that Global and Gong Thach were each negligent and their negligence resulted in Claimants' harm totaling $15 million. *See* (*Id.*) Thereafter, the parties litigated post-trial motions that resulted in the Court of Common Pleas Judge Schulman granting[2] Global's Motion Notwithstanding the Verdict on February 18, 2025. (Ex. 10, ECF No. 246.) After having defended Global and Gong Thach for years in the Underlying Actions, Nautilus filed the present action requesting this Court find that neither a duty to defend nor indemnify Global exist pursuant to the Nautilus Policies since there is no verdict or judgment against Global—its insured. *See generally* (ECF No. 201.) Claimants, however, appealed Judge Schulman's order to the Pennsylvania Superior Court.[3] *See* (ECF No. 256.)

Turning to the Nautilus Policies, Nautilus issued two insurance policies to the named insured Global: (1) the commercial lines policy[4] with a coverage period of January 8, 2019 to

---

[2] Judge Schulman found that Claimants "failed to present sufficient evidence to support the jury's determination of negligence against Global as to either independent liability or vicarious liability."
[3] As of the filing of this memorandum, the appeal remains pending.
[4] CGL Policy Number NC745680.

January 8, 2020 ("CGL Policy"); and (2) an excess liability policy[5] with a coverage period of March 26, 2019 to January 8, 2020 ("Excess Policy"). *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240).

The CGL Policy contained an insuring agreement stating in relevant part:

**1. Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> * * *
>
> **(2) b.** This insurance applies to "bodily injury" and "property Damage" only if:
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>
> * * *
>
> **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".
>
> * * *

The policy also contains the following definitions:

"Bodily injury" is defined as bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

---

[5] Excess Policy Number AN065465.

"Occurrence" is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Insured" is defined as any person or organization qualifying as such under Section II – Who is a Insured.

> **1.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".
>
> * * *
>
> **2.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.
>
> * * *
>
> **10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".
>
> * * *
>
> **19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.
>
> * * *
>
> **20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

*See* (Ex. 1, ECF No. 246.)

To support Nautilus' request for declaratory judgment in their favor, Nautilus relies on Exclusions that exist in its policy issued to Global. The Exclusions contain provisions providing that the CGL policy does not apply to:

**2. Exclusions**

This insurance does not apply to:

* * *

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

* * *

"Auto" in relevant part, is defined as "A land motor vehicle, trailer or semitrailer designed for travel on public roads . . ." or "Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."

The CGL Policy excludes coverage for:

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

*See* (Ex. 1, ECF No. 246.)

The Excess Policy contained an insuring agreement stating in relevant part:

**1. Insuring Agreement**

**a.** We will pay on behalf of the "insured" the "ultimate net loss" in excess of the "underlying insurance limit" because of injury or damage caused by a "loss event" to which this insurance applies provided:

**(1)** The aggregate amount of all limits of "Underlying Insurance", as shown in the Schedule of "Underlying Insurance", has been exhausted by payment of judgments, settlements, costs or expenses; and

**(2)** The "loss event" occurs or is committed during the policy period.

* * *

**b.** Except to the extent any terms, definitions, limits of insurance, conditions or exclusions of the "controlling underlying insurance" are different from any terms, definitions, limits of insurance, conditions or exclusions of this policy, this policy will provide the same coverage for "ultimate net loss" as provided by the "controlling underlying insurance". If any terms, definitions, limits of insurance, conditions or exclusions of this policy are more restrictive than those of the "controlling underlying insurance", then this policy's terms, definitions, limits of insurance, conditions or exclusions will apply. However, under no circumstance will this policy provide broader coverage than that provided by the "underlying insurance".

*See* (Ex. 2, ECF No. 246.)

Also, the policy contains provisions regarding defending claims against the insured, specifying that:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – ALL AUTOS**

This endorsement modifies the insurance provided under the following:

EXCESS LIABILITY POLICY

This insurance does not apply to any injury or damage, costs or expenses arising out of, resulting from, caused or contributed to by the ownership, maintenance, use, loading or unloading or entrustment to others of any *auto*.

**EXCLUSION – EMPLOYER'S LIABILITY**

This endorsement modifies the insurance provided under the following:

EXCESS LIABILITY POLICY

This insurance does not apply to injury, costs or expenses arising out of, resulting from, caused or contributed to by injury to:
**1.** An "employee" of the "insured" arising out of and in the course of:
  **a.** Employment by the "insured"; or
  **b.** Performing duties related to the conduct of the "insured's" business; or
**2.** The spouse, child, parent, brother or sister of that "employee"; or any other person; as a consequence of Paragraph **1.** above.
This exclusion applies whether the "insured" may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.
To the extent coverage is provided by "underlying insurance" for liability assumed by the "insured" under an insured contract this exclusion does not apply to any liability assumed by an "insured".

As used in this exclusion, "employee" includes a leased worker.

*See* (Ex. 2, ECF No. 246.)

Notably, Global and Gong Thach have not disputed and/or answered Nautilus' Third Amended Complaint, and defaults[6] have been entered against them for failure to plead or otherwise defend. *See generally* Dkt. No. 2:20-cv-3937 (6/12/2025). Nautilus' defense of Global in the Underlying Actions has been subject to a full reservation of rights, which includes a right to not defend and indemnify Global and withdraw from its defense. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240).

[6] The allegations in the Third Amended Complaint are unrefuted by Global and Gong Thach.

On August 28, 2025, Nautilus moved for Summary Judgment pursuant to Fed. R. Civ. P. 56(a) arguing that since there is no genuine dispute as to any material fact, they are entitled to judgment as a matter of law. (ECF No. 246.) Claimants, however, argue that Nautilus' motion is premature due to the pendency of the Underlying Actions appeal, and so, the motion should be denied or deferred under Rule 56(d) since genuine issues of material fact exist. (ECF No. 256.) Having established the factual background, the Court will address the parties' arguments in turn.

## III. LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of h[is] case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotations omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Pursuant to the Declaratory Judgement Act, 28 U.S.C., §2201, Nautilus has alleged sufficient facts demonstrating that the Nautilus Policies issued to Global do not provide coverage for the Auto Accident. *See* (Ex. 1 and 2, ECF No. 246). Thus, Nautilus does not have a duty to defend or indemnify Global. While Claimants' arguments seek to establish a right derived from the Nautilus Policies or Pennsylvania law, they fail to overcome the standard for a summary judgment motion, identifying a genuine issue for trial. Therefore, Nautilus is entitled to judgment as a matter of law.

### A. Contractual Interpretation Principles

As a preliminary matter, the court must "look to the language of the policies themselves to determine in which instances they will provide coverage." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.,* 908 A.2d 888, 896 (Pa. 2006). This Court is tasked with interpreting the parties' intent as manifested by the insurance policy terms. *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999) (citations omitted). "When the language of the policy is clear and unambiguous, [the] court is required to give effect to that

language." *401 Fourth Street v. Investors Insurance Co.*, 583 Pa. 445, 455 (2005). Alternatively, "[w]hen a provision in the policy is ambiguous ... the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification, [taking into account] the insurer drafts the policy and controls [its] coverage." *Id*. To summarize, this Court must interpret and apply the Nautilus Policies in accordance with their plain language and relevant Pennsylvania law.

Based on the above-stated principles of contractual interpretation, the Court's inquiry is tailored to the agreed-upon terms of the insurance policy. Pennsylvania courts have long-reasoned that the four-corners rule applies to insurance contract disputes when determining an insurer's duty to defend and indemnify. *See Kvaerner*, 908 A.2d at 896. An insurer's "duty to defend is triggered, if at all, by the factual averments contained in the complaint itself." *Id*. Thus, "[u]nder Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage." *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985). "Exclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import." *Id*. at 761 (citing *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 307 (1983)). And so, this Court will unequivocally apply the four-corners rule here.

**B. Language of Nautilus Policies**

With these principles in mind, the Court turns to the language of the Nautilus Policies. Nautilus issued to Global a CGL Policy and an Excess Policy. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240). Nautilus, pursuant to the Nautilus Policies' Insuring Agreement, agreed to pay the sums that Global "becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which t[he]

insurance applies." *See* (Ex. 1 and 2, ECF No. 246.) However, the Nautilus Policies identify circumstances when such coverage does not apply via the Exclusions section of each policy. *See* (Ex. 1 and 2, ECF No. 246.) The Exclusions are designed to preclude coverage if the claim is triggered by certain precipitating events, i.e. auto accidents or employer liability.

Under the CGL Auto Exclusion, Nautilus will not provide coverage to its insured when "'bodily injury' arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' … operated by … any insured." *See* (Ex. 1, ECF No. 246.) The Excess Auto Exclusion provides that the excess coverage "does not apply to any injury or damage … arising out of, resulting from, caused or contributed to by the … use… of any auto." *See* (Ex. 2, ECF No. 246.) Notably, the Excess Policy does not provide coverage broader than that provided by the CGL Policy. These policy terms are unambiguous.

Assessing relevant precedent interpreting the operative policy term—"arising out of," the Court finds that such term/phrase, in the context of insurance contracts, are well-settled. In Pennsylvania, a policy provision containing the phrase "arising out of" has an unambiguous meaning and is "satisfied by '[b]ut for' causation, i.e., a cause and result relationship." *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 403 Pa. 603, 170 A.2d 571, 573 (1961). It, therefore, follows that the phrase "arising out of," in the context of an insurance exclusion, too, has an unambiguous meaning: "causally connected with, not proximately caused by." *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 159 (3d Cir. 2017).

Comparing the terms of the Nautilus Policies to the allegations in the Underlying Complaint, this Court finds that the undisputed facts from the Underlying Complaint, including those from the October 2024 trial do not trigger the policies' provisions of coverage. It is undisputed that Nautilus issued insurance coverage to Global, Gong Thach was employed by

Global, and Gong Thach—acting in the course of employment—operated Global's Vehicle resulting in Claimants' deaths and serious bodily injury. *See* (ECF No. 201); *compare* (ECF No. 201) *with* (ECF No. 238) *and* (ECF No. 239), *and* (ECF No. 240). The plain language of the Nautilus Policies expressly exclude coverage for Gong Thach's negligence. *See generally id*. But for Gong Thach's use and operation of the Vehicle, Claimants deaths and injuries arising out of such use would not have occurred. *See* (Ex. 10, ECF No. 246). It was certainly foreseeable that Global's employ of Gong Thach to drive Claimants in the Vehicle to-and-from a job site on a highway could result in an auto accident. The Nautilus Policies makes clear: "bodily injury" "arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' … operated by … any insured," *see* (Ex. 1, ECF No. 246), and "any injury or damage … arising out of, resulting from, caused or contributed to by the … use… of any auto," *see* (Ex. 2, ECF No. 246). Having established that such terms are clear and unambiguous, the Court will give it effect by considering whether Nautilus is obligated to defend and indemnify Global further.

**C. Nautilus' Duty to Defend and Indemnify**

Under Pennsylvania law, Nautilus will be obligated to defend and indemnify Global in a suit brought by Claimants if it is determined that Claimants' Underlying Complaint triggers provisions of coverage. *See Kvaerner*, 908 A.2d at 896. The question before the Court is whether the allegations in the Underlying Complaint triggered coverage under the Nautilus Policies issued to Global. Unfortunately for the Claimants, the answer is No.

**i. Duty to Defend**

Nautilus did not have a duty to defend Global when it received Claimants' Underlying Complaint. Claimants brought claims for negligence, wrongful death, and survival action. *See* (Ex. D, ECF No. 201.) Claimants allege in the Underlying Complaint, in relevant part, that (1) Global

failed to properly use and operate the Vehicle given the weather conditions, (2) Global failed to maintain appropriate motor vehicle liability insurance for vehicles used to transport workers, (3) Gong Thach and others were employees acting within the course and scope of their employment with Global at the time of the Auto Accident, (4) Global knew or should have known that Gong Thach was a "dangerous, reckless, and negligent automobile driver," (5) Global knew or should have known the risk of serious bodily injury or death to routinely transporting Claimants to-and-from the job site. *See generally* (Ex. D, ECF No. 201.) To summarize, Claimants asserted claims of direct and vicarious liability against Global for its negligent conduct in the operation of the Vehicle that resulted in deaths and serious bodily injury. Any damages "arising out of" Global or Gong Thach's use and operation of the Vehicle—an "auto", under Pennsylvania law and the Nautilus Policies, are not covered under the provisions of coverage. Accordingly, Nautilus did not have a duty to defend Global after receiving the Underlying Complaint because such allegations did not comport with the Nautilus Policies. *See Pac. Indem. Co.*, 766 F.2d at 760.

**ii. Duty to Indemnify**

Having found that the Underlying Complaint does not trigger coverage for Nautilus to defend Global, the Court must consider Nautilus' obligation to indemnify Global. "Because an insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016); *see also Sapa*, 939 F.3d at 250. Though related obligations, the two duties are distinct. For example, the duty to indemnify does not materialize until the insurer is required to provide a defense. Although Global's liability is being considered by the Pennsylvania Superior Court following Judge Schulman's Judgment Notwithstanding the Verdict, Nautilus does not have a duty

to indemnify Global against Claimants. As stated above, Claimants' deaths and serious bodily injury arose out of Global's use and operation of the Vehicle, which is a clear and unambiguous exclusion in the Nautilus Policies. Regardless of the Underlying Actions' appellate review outcome, the Nautilus Policies expressly precludes provisions of coverage for such actions. Here, because no duty to defend Global exists, it follows that Nautilus has no duty to indemnify Global.

**D. Claimants' Counterclaims**

**i. Breach of Contract and Third-Party Beneficiary Claims**

Claimants contend that a breach of contract claim is viable against Nautilus because they are third-party beneficiaries of the Nautilus Policies issued to Global. However, Claimants' attempt to attribute Global's and Gong Thach's liability to Nautilus is misplaced. "It is well-settled that under Pennsylvania law, an injured party has no right to directly sue the insurer of an alleged tortfeasor unless a provision of the policy or a statute create[s] such a right." *Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630, 632 (3d Cir. 1998). There is no provision of the Nautilus Policies or Pennsylvania law that gives Claimants the right to directly sue Nautilus for Global's breach of the Nautilus Policies.

Claimants fail to show that they are intended third-party beneficiaries under the Nautilus Policies. In review of the Underlying Complaint, Claimants fail to direct the Court as to where this right is expressly established in the Nautilus Policies that establishes an injured party could assert a third-party right against Nautilus. *See Strutz v. State Farm Mut. Ins. Co.*, 415 Pa. Super. 371, 374 (1992) ("To be considered a third-party beneficiary in this state it is necessary to show both parties to the contract had an intent to benefit the third party through the contract and did, in fact, explicitly indicate this intent in the contract. We find no such intent in [the tortfeasor's] contract of insurance with [the insurer], either explicit or implied. The parties' intent was to exchange premiums for

liability protection, with no eye toward benefiting persons such as the plaintiffs."). Moreover, "in cases involving insurance contracts, courts have consistently rejected claims of third-party beneficiary standing." *Hensley v. CNA*, Civ. A. No. 19-2837, 2020 WL 377014, at *3 (E.D. Pa. Jan. 23, 2020) (citing *Burks v. Fed. Ins. Co.*, 883 A.2d 1086, 1091 (Pa. Super. 2005) and *Commonwealth v. Celli-Flynn*, 115 Pa. Cmwlth. 494, 540 A.2d 1365, 1368 (1988)). Global had an arms-length contract with Nautilus. Claimants, however, do not have a direct contractual relationship with Nautilus. Here, because Claimants failed to show Nautilus and Global having the "intent," either express or implied, to create a third-party beneficiary right in the construction of the Nautilus Policies to their benefit, the Court must conclude that Claimants are not considered third-party beneficiaries of the Nautilus Policies. Therefore, because Claimants are not considered intended third-party beneficiaries to the Nautilus Policies, they cannot prove a breach of contract claim against Nautilus.

**ii. Negligence Claim**

Claimants further contend that Nautilus' conduct was negligent. To assert a viable claim of negligence, Claimants must show that: (1) Nautilus owed Claimants a duty of care or obligation recognized by law; (2) Nautilus breached that duty; (3) a causal connection existed between Nautilus' conduct and the resulting injury; and (4) actual damages occurred. *Grove v. Port Auth.*, 655 Pa. 535, 554 (2019). Here, because Pennsylvania does not recognize a duty owed by Nautilus to Claimants, the Court considers what, if any, duty under tort law is owed by Nautilus to Claimants. There are none. Relying on the plain language of the Nautilus Policies, the duties and obligations owed by Nautilus to Global were expressly identified in the insurance policy. Claimants are not parties to the contract entered into by Nautilus and Global, and, as stated above, are not third-party beneficiaries to said contract. Notably, Claimants fail to identify a duty imposed

on Nautilus that was in turn owed to Claimants. *See generally* (ECF No. 256.) For these reasons, Claimants' negligence claim is dismissed.

**iii. Unjust Enrichment Claim**

To establish a claim for unjust enrichment, Claimants must show: "(1) benefits conferred on [Nautilus by Claimants], (2) appreciation of such benefits by [Nautilus], and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for [Nautilus] to retain the benefit without payment of value." *Argue v. Triton Digital Inc.*, 734 F. App'x 148, 151 (3d Cir. 2018) (quoting *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. 2017)). "To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for [them] to retain." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (citing *Torchia v. Torchia*, 346 Pa.Super. 229, 499 A.2d 581, 582 (1985)). The Third Circuit has also made clear that such a claim requires more than a showing that a defendant may have benefited in some way from the alleged dispute. *Id*. (citations omitted).

Pennsylvania courts have long held "that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 520 (2006) (citations omitted). Unjust enrichment "imposes a duty, not as a result of any agreement, ... but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. 2006) (citation and internal quotations omitted).

Here, Claimants allege that Nautilus unjustly enriched itself by issuing a policy that did not cover a specific, known risk, then retained the premiums paid by Global for policy coverage at the

expense of Claimants' lives and/or safety. Even though there is no contract between Claimants and Nautilus, Claimants may raise a claim of unjust enrichment against Nautilus, however, Claimants at no point allege nor proffer evidence that they conferred any benefit to Nautilus. Even if one assumed that Nautilus had received some benefit from Claimants, Claimants still fail to show how Nautilus benefited from the Auto Accident or from Claimants. *See Sovereign Bank*, 533 F.3d at 180. Accordingly, this Court will not employ the doctrine of unjust enrichment to find that Nautilus should provide coverage to Claimants when they have failed to show how Nautilus was enriched by them. Therefore, Claimants' unjust enrichment claim against Nautilus is dismissed with prejudice.

Nautilus and Global entered into an arms-length agreement whereby Nautilus agreed to provide commercial general liability and excess liability coverage to Global in strict accordance with the Nautilus Policies' terms. With Claimants alleging negligence and wrongful death arising out of the use and operation of Global's Vehicle and such conduct being in direct conflict with said policies, the Court finds that there is no genuine dispute of material fact and Nautilus is entitled to judgment as a matter of law.

Accordingly, the Court now finds that pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, Nautilus has alleged sufficient facts demonstrating that coverage does not exist for Global to withstand its Motion for Summary Judgment. Nautilus neither owes a duty to defend nor indemnify Global in the Underlying Action. Therefore, Nautilus may withdraw from defense of Global in the Underlying Action pursuant to its reservation of rights.

## V. CONCLUSION

For the reasons stated above, Nautilus' Motion for Summary Judgment is GRANTED. An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ *John Milton Younge*
**JOHN M. YOUNGE, J.**